UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAUN MICHAEL BARRETT,<br><br>    Plaintiff,<br><br>v.<br><br>M. MESSER, et al.,<br><br>    Defendants. | Case No. 1:20-cv-01313-CDB (PC)<br><br>**SECOND SCREENING ORDER**<br><br>(Doc. 18) |

Plaintiff Shaun Michael Barrett is proceeding with the limited assistance of counsel in this civil rights action brought pursuant to 42 U.S.C. § 1983.

**I.     PROCEDURAL BACKGROUND**

Plaintiff filed his original complaint on September 14, 2020. (Doc. 1.)

On November 4, 2020, the Court granted Plaintiff's application to proceed *in forma pauperis*. (Doc. 9.)

On May 17, 2021, the Court issued its First Screening Order. (Doc. 10.) Plaintiff alleged a violation of the Americans with Disabilities Act (ADA) and a due process violation as to confiscated property; the Court found Plaintiff failed to state any cognizable claim upon which relief could be granted. (*Id*. at 4-6.) Plaintiff was afforded 21 days within which to file a first amended complaint. (*Id*. at 6-7.)

//

On June 3, 2021, Plaintiff filed a first amended complaint. (Doc. 12.)

On June 11, 2021, this Court issued an Order Appointing Counsel for a Limited Purpose. (Doc. 14.) Specifically, Teresa A. Bush-Chavey was appointed for the limited purpose of investigating Plaintiff's claims and filing a second amended complaint or a notice that an amended complaint would not be appropriate. (*Id.* at 1.) Counsel was provided 90 days within which to file an amended complaint or a notice. (*Id.* at 1-2.)

Following an extension of time, counsel filed the second amended complaint on March 7, 2022. (Doc. 18.)

On March 9, 2022, then temporarily assigned Magistrate Judge Stanley A. Boone approved counsel's request for reasonable costs incurred. (Doc. 19.)

On October 6, 2022, this matter was reassigned to the undersigned for all further proceedings. (Doc. 20.)

## II. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). The Court should dismiss a complaint if it lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

## III. PLEADING REQUIREMENTS

### A. Federal Rule of Civil Procedure 8(a)

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). A complaint must contain "a short and plain statement of the claims showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512 (internal quotation marks & citation omitted).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Factual allegations are accepted as true, but legal conclusions are not. *Id*. (citing *Twombly*, 550 U.S. at 555).

The Court construes pleadings of *pro se* prisoners liberally and affords them the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations," not his legal theories. *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). Furthermore, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled," *Bruns v. Nat'l Credit Union Admin*., 122 F.3d 1251, 1257 (9th Cir. 1997) (internal quotation marks & citation omitted), and courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks & citation omitted). The "sheer possibility that a defendant has acted unlawfully" is not sufficient to state a cognizable claim, and "facts that are merely consistent with a defendant's liability" fall short. *Iqbal*, 556 U.S. at 678 (internal quotation marks & citation omitted).

### B. Linkage and Causation

Section 1983 provides a cause of action for the violation of constitutional or other federal rights by persons acting under color of state law. *See* 42 U.S.C. § 1983. To state a claim under section 1983, a plaintiff must show a causal connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Rizzo v. Goode*, 423 U.S. 362, 373-75 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legal required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted).

//

### C. Supervisory Liability

Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676-77; *see e.g., Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1020-21 (9th Cir. 2010) (plaintiff required to adduce evidence the named supervisory defendants "themselves acted or failed to act unconstitutionally, not merely that subordinate did"), *overruled on other grounds by Castro v. C'nty of Los Angeles,* 833 F.3d 1060, 1070 (9th Cir. 2016); *Jones v. Williams,* 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983").

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009). Accord *Starr v. Baca*, 652 F.3d 1202, 1205-06 (9th Cir. 2011) (supervisory liability may be based on inaction in the training and supervision of subordinates).

Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations & quotations marks omitted), *abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1970).

To prove liability for an action or policy, the plaintiff "must ... demonstrate that his deprivation resulted from an official policy or custom established by a ... policymaker possessed with final authority to establish that policy." *Waggy v. Spokane County Washington*, 594 F.3d 707, 713 (9th Cir. 2010). When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). Vague and conclusory allegations concerning the

4

involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

### D. Doe Defendants

Although the use of Doe defendants is generally disfavored, "'the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities . . ..'" *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (quoting *Gillespie v. Civiletti*, 629 E.2d 637, 642 (9th Cir. 1980)).

## IV. DISCUSSION

### A. Plaintiff's Second Amended Complaint

Plaintiff's second amended complaint names the following as Defendants:

(1) Correctional Officers Liang, Ramirez and Does 1 through 10 in their individual capacities for confiscation of Plaintiff's hearing aids during a search conducted at Corcoran State Prison on or about October 22, 2019, and for the failure to provide a CDCR Form 1083 cell search receipt;

(2) Does 11 through 20 in their individual capacities for failing to provide due process after taking Plaintiff's Oticon hearing aids;

(3) Correctional Officers Messer, Bugarin, Silva, Mecum and Does 21 through 40 in their individual capacities for denying Plaintiff access to the TDD/TYY equipment and for failing to provide reasonable accommodation to Plaintiff that would have allowed him to participate in programs, services or activities at Corcoran State Prison, including but not limited to education, substance abuse, transitional programs and employment;

(4) Warden Ken Clark is his official capacity, and, to the extent his actions were taken outside the scope of his authority, also in his individual capacity; and

(5) Secretary Kathleen Allison in her official capacity.

(Doc. 18 at 2-3.)

Plaintiff seeks general, compensatory, punitive and exemplary damages, declaratory and injunctive relief, equitable relief, attorneys' fees and costs, prejudgment interest on monetary damages to the extent permitted by law, and any other relief the court may deem just and proper.

5

(Doc. 18 at 11-12.)

Plaintiff contends he has a hearing disability. He was approved for use of a telecommunication device for the deaf while incarcerated at High Desert State Prison. Plaintiff was hearing tested while housed at North Kern State Prison in April 2017. A CDCR 7536 DME Supply Receipt dated April 12, 2017 documents the approval of his request to order two Oticon miniRITE hearing aids. Three withdrawals totaling $990.93 from Plaintiff's inmate trust account between April 24, 2017 and May 9, 2017 were for the purchase of hearing aids. Plaintiff was transferred to Centinela State Prison in June 2017. Plaintiff contends that while confined at North Kern and Centinela state prisons he was approved for and used his Oticon hearing aids and the telecommunications devices for the deaf (TDD).

In December 2018, Plaintiff was transferred to Corcoran State Prison (CSP) and was permitted to use his Oticon hearing aids until October 22, 2019. He contends he was permitted occasional access to the TDD equipment at CSP from December 2019 through November 2019.

Prison services, programs, and activities generally available at North Kern, Centinela and CSP include phone contact with family members, educational opportunities, employment, transitional programs, and substance abuse programs. The Oticon hearing aids allowed Plaintiff to hear with sufficient clarity enabling him to participate in the activities, programs and services offered.

Plaintiff contends that on October 22, 2019, Defendants Liang, Ramirez and Does 1 through 10 custody officers conducted a search of the prison. During the search, the officers entered Plaintiff's cell and confiscated his Oticon hearing aids. Plaintiff asserts he inquired about the missing hearing aids upon returning to his cell but was never provided documentation of their confiscation. Plaintiff believes CDCR Form 1824, Log No. 19-6764 contains Plaintiff's report that custody staff searched his cell on October 22, 2019 and did not provide him a cell search receipt to document the confiscation, but that Plaintiff was advised that medical staff would give him new and better hearing aids for free.

On October 29, 2019, Plaintiff submitted CDCR Form 1824 and Form 602 to request return of or reimbursement for the Oticon hearing aids confiscated on October 22. In November

1    2019, Plaintiff contends CSP staff no longer permitted him to use the TDD equipment.

2        On November 12, 2019, Plaintiff asserts the RAP issued its response to his Form 1824,
3    advising him reimbursement concerns would be best addressed through the inmate appeals
4    process. Plaintiff contends he never received a reply to his Form 602 (grievance/appeal) filed on
5    October 29, 2019.

6        On October 28, 2019, Plaintiff was referred for an audiology appointment. Plaintiff
7    believes a CDCR 7536 DME Supply Receipt dated November 21, 2019 documents his receipt of
8    state-issued hearing aids on that date.

9        Plaintiff contends these replacement hearing aids do not fit his ears properly, causing the
10   hearing aids to fall out frequently. Further, the replacement hearing aids do not filter out or
11   diminish background noise making it difficult for him to communicate because Plaintiff cannot
12   hear what people are saying unless there are no other competing sounds.

13       Plaintiff asserts he lost his job as a classroom aide after the Oticon hearing aids were
14   confiscated because he could not hear sufficiently to assist the students or the instructor. Plaintiff
15   sought but was unable to participate in substance abuse treatment, education, and transition
16   programs after the Oticon hearing aids were confiscated because he could not hear properly.

17       On February 1, 2020, the Prison Law Office wrote to the California Department of
18   Corrections and Rehabilitation (CDCR) on Plaintiff's behalf, to assist him in the return of or
19   reimbursement for the confiscated hearing aids. The correspondence advised CDCR that Plaintiff
20   should have been allowed to keep his hearing aids unless his primary care physician evaluated
21   him and determined the hearing aids were no longer appropriate, citing statutory authority.
22   Further, the correspondence advised that the RAP's reply to Plaintiff's Form 1824 failed to
23   address Plaintiff's allegation that custody officers inappropriately confiscated his hearing aids and
24   did not place Plaintiff's allegations on the non-compliance log, resulting in RAP's failure to
25   investigate and address Plaintiff's disability-related issues.

26       Plaintiff contends his Oticon hearing aids have never been returned to him, nor has he
27   been reimbursed for them.

28   //

On May 21, 2021, Plaintiff was transferred from CSP to California State Prison, Los Angeles.

### B. Plaintiff's Causes of Action

#### 1. *Fourteenth Amendment Due Process Violation*

Plaintiff contends Defendants Liang, Ramirez and Does 1 through 10, confiscated his Oticon hearing aids on October 22, 2019, while acting under color of state law and with the mistaken belief that the hearing aids were wireless communication devices listed as contraband. Plaintiff contends these Defendants failed to provide him with a receipt for the taking of the hearing aids and failed to address his claims as stated in Form 1824, filed by Plaintiff in an effort to obtain the return of or reimbursement for the hearing aids. Further, Plaintiff contends Defendants failed to provide a replacement of equal quality following the confiscation. The state-issued replacement hearing aids are ill-fitting and fall out frequently, making it difficult for Plaintiff to hear. Plaintiff contends his Oticon hearing aids were of a higher quality and greatly reduced the distortion caused by background noise. As a result of Defendants' confiscation, Plaintiff was unable to hear with sufficient clarity, causing the loss of his job as a classroom aide, and making it so Plaintiff was unable to participate in educational opportunities, substance abuse treatment and transitional programs at CSP without the provision of reasonable accommodations which Plaintiff sought, and Defendants failed to provide.

The Due Process Clause of the Fourteenth Amendment protects prisoners from being deprived of property without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). "An authorized, intentional deprivation of property is actionable under the Due Process Clause." *Christ v. Hartley*, No. 1:11-cv-00705-AWI-DLB, 2013 WL 127737, at *3 (E.D. Cal. 2013) (citing *Hudson v. Palmer*, 468 U.S. 517, 532 (1984)) (citations omitted), *F&R adopted*, 2013 WL 663314 (Feb. 21, 2013). "An authorized deprivation is one carried out pursuant to established state procedures, regulations, or statutes." *Id.* (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982)) (citation omitted).

However, "an *unauthorized* intentional deprivation of property by a state employee does not constitute a violation of . . . Due Process . . . if a meaningful postdeprivation remedy for the

8

loss is available." *Hudson*, 468 U.S. at 533 (emphasis added). "California [l]aw provides an adequate post-deprivation remedy for any property deprivations." *Barnett v. Centoni*, 31 F.3d 813, 816-17 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810-895.) State prisoners "may file suit in state court pursuant to California Government Code §§ 900, *et seq.*, to seek recovery for a tort" committed by a state employee. *Boswell v. Perez*, No. 1:09-cv-00822-MJS, 2011 WL 4500010, at *2 (E.D. Cal. 2011) (citations omitted).

Here, Plaintiff has plausibly alleged violations of his due process rights for the authorized, intentional deprivation of his Oticon hearing aids against Defendants Liang, Ramirez and Does 1 through 20.

### 2. *Americans with Disabilities Act (ADA) Violation*

Plaintiff alleges he is a qualified individual with a disability because he has a physical hearing impairment. Plaintiff's hearing disability substantially limits one or more of his major activities, including but not limited to the activities of communication and participation in employment, substance abuse treatment, transitional programs, and educational opportunities. Plaintiff asserts he was qualified to participate in the benefits generally afforded to non-hearing-impaired inmates at CSP. CSP receives federal funding. Further, Plaintiff alleges he was excluded from participating in or denied the benefits of the services, programs or activities at CSP because of his hearing disability, was repeatedly refused the use of TDD equipment as a reasonable accommodation of his hearing disability, and was thus excluded from phone contact with family, an activity provided to other non-hearing-impaired CSP inmates. Moreover, Plaintiff was excluded from participating in or denied the benefits of the services, programs or activities at CSP because of his hearing disability when Plaintiff sought, but Defendants failed to provide, reasonable accommodations that would have permitted Plaintiff's participation in educational opportunities, employment, transitional programs and substance abuse treatment provided to other non-hearing-impaired CSP inmates. Plaintiff further alleges he was refused the use of TDD equipment, and that Defendants failed to provide reasonable accommodation in that regard. He further contends Defendants' exclusion of Plaintiff's participation in the education, employment, substance abuse treatment and transition programs prevented his parole.

Plaintiff seeks injunctive relief against Defendants Clark and Allison in their official capacities. He seeks to obtain a court order clarifying he is entitled to reasonable accommodations based upon his hearing disability, allowing for his participation in the programs, services, and activities available at CSP and/or other CDCR facilities and any other relief the court deems appropriate.

Additionally, Plaintiff contends Defendants' acts or omissions resulting in his exclusion from the programs, services and activities available "not only violated the ADA but also violated his 8th Amendment constitutional right to be free from cruel and unusual punishment because his exclusion …, in combination with the taking of his Oticon hearing aids without due process created a situation for Plaintiff very similar to solitary confinement, which prevented his contact with family members by telephone and caused Plaintiff to have extreme difficulty hearing …."

Finally, Plaintiff contends the Defendants' conduct "in confiscating his Oticon hearing aids without due process and failing to respond appropriately to his requests for due process violated the ADA because the taking of the hearing aids resulted in his exclusion from participation by reason of his hearing disability in the benefits of services, programs, or activities offered to non-hearing-impaired inmates and the conduct also violated his 14th amendment right to be free from the deprivation of property without due process of law as alleged" in his first cause of action.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. This prohibition extends to inmates in state prisons. *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 213 (1998). To state a claim under Title II, the plaintiff must allege four elements: (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits by the public entity; and (4) such exclusion, denial of benefits or discrimination was by reason of the plaintiff's disability. *Simmons v. Navajo County, Ariz*, 609 F.3d 1011, 1021 (9th Cir. 2010), overruled on

other grounds by *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc).

Courts must construe the language of the ADA broadly in order to give effect to the ADA's remedial goals. *Fortyune v. City of Lomita*, 766 F.3d 1098, 1101 (9th Cir. 2014). In general, a complaint that properly states a claim under Title II of the ADA also states a claim under Section 504 of the Rehabilitation Act. *See Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1045 n. 11 (9th Cir. 1999) ("[C]ourts have applied the same analysis to claims brought under both statutes"); *Armstrong v. Wilson*, 124 F.3d 1019, 1023 (9th Cir. 1997) ("Congress has directed that the ADA and [Rehabilitation Act] be construed consistently").

"To recover monetary damages under Title II of the ADA, a plaintiff must prove intentional discrimination on the part of the defendant." *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001). The standard for intentional discrimination is deliberate indifference, "which requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." *Id*. at 1139. For a claim under the ADA to be successful, the plaintiff must both "identify 'specific reasonable' and 'necessary' accommodations that the state failed to provide" and show that the defendant's failure to act was "a result of conduct that is more than negligent, and involves an element of deliberateness." *Id*. at 1140. Punitive damages are not available on claims under the ADA. *Barnes v. Gorman*, 536 U.S. 181, 189-90 (2002).

Here, liberally construing the second amended complaint, Plaintiff has plausibly alleged ADA claims against Correctional Officers Messer, Bugarin, Silva, Mecum and Does 21 through 40 in their individual capacities, and against Defendants Clark and Sullivan in their official capacities.

### 3. Rehabilitation Act of 1973 Violation

Plaintiff contends the facts alleged demonstrate that he is disabled, that he is qualified to participate in the activities, programs or services provided to inmates at CSP, that he sought to participate in the programs, and that he was excluded and not allowed to benefit from, and subjected to discrimination in, the activities, programs or services because of his hearing disability, by the actions of Defendants in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

Title II of the ADA and § 504 of the Rehabilitation Act (RA) both prohibit discrimination on the basis of disability. *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002). The ADA applies only to public entities, whereas the RA proscribes discrimination in all federally funded programs. *Id*. Specifically, the RA provides: "No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ...." 29 U.S.C. § 794(a). Punitive damages are not available on claims under the ADA or the RA. *Barnes*, 536 U.S. at 189-90.

Here, liberally construing the second amended complaint, Plaintiff has plausibly alleged RA claims against Correctional Officers Messer, Bugarin, Silva, Mecum and Does 21 through 40 in their individual capacities, and against Defendants Clark and Sullivan in their official capacities.

## V. CONCLUSION AND ORDER

For the reasons set forth above, the Court finds that Plaintiff's second amended complaint states cognizable claims of (1) due process violations against Defendants Liang, Ramirez and Does 1 through 20; (2) ADA violations against Defendants Messer, Bugarin, Silva, Mecum and Does 21 through 40 in their individual capacities, and against Defendants Clark and Sullivan in their official capacities; and (3) RA violations against Defendants Messer, Bugarin, Silva, Mecum and Does 21 through 40 in their individual capacities, and against Defendants Clark and Sullivan in their official capacities. The Court will issue a separate order directing service of the second amended complaint.

IT IS SO ORDERED.

Dated: **February 10, 2023**

UNITED STATES MAGISTRATE JUDGE