UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAUN MICHAEL BARRETT,<br><br>  Plaintiff,<br><br>  v.<br><br>M. MESSER, et al.,<br><br>  Defendants. | Case No. 1:20-cv-01313-CDB (PC)<br><br>**ORDER DENYING MOTION TO APPOINT COUNSEL**<br><br>**ORDER GRANTING EXTENSION OF TIME WITHIN WHICH TO OPPOSE MOTIONS TO DISMISS**<br><br>(Doc. 38)<br><br>**ORDER DISCHARGING ORDER TO SHOW CAUSE** |

Plaintiff Shaun Michael Barrett is appearing *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

**I.   INTRODUCTION**

On May 22, 2023, the Defendants filed motions to dismiss Plaintiff's second amended complaint. (Docs. 31 & 32.) Pursuant to Local Rule 230(*l*), Plaintiff's oppositions or statements of non-opposition to the motions were to be filed "not more than twenty-one (21) days after the date of service of the motion." Plaintiff filed neither oppositions nor statements of non-opposition.

//

1   On June 27, 2023, the Court issued its Order To Show Cause (OSC) In Writing Why
2   Action Should Not Be Dismissed For Failure To Obey Court Orders. (Doc. 37.)
3   On July 10, 2023, Plaintiff filed an untitled document. apparently in response to the OSC.
4   (Doc. 38.) The Court construes the document to be a request for an extension of time within
5   which to respond to Defendants' motions to dismiss, a motion for the appointment of counsel, and
6   requests for court orders. (*Id*.)

## II. DISCUSSION

In the document filed July 10, 2023, Plaintiff indicates he has "a 14 day deadline" that he cannot meet because he is in administrative segregation. (Doc. 38.) As a result, he does not have possession of his property. (*Id*.) Plaintiff states that despite inquiring of prison officials, he has not been advised when his property will be returned. (*Id*.) Plaintiff cannot finish "the motion [he] has been working on" until the property is returned, "if it is still in the property that [he] has left." (*Id*.) Next, Plaintiff asks the Court for "help" because he does not have either a GED or a high school diploma and he needs "some type of attorney" appointed to assist him. (*Id*.) Plaintiff asserts he will be in administrative segregation at Lancaster State Prison "pending an 90 day investigation at least 90 days for a bottle of glue and overfamiliar relationship with staff." (*Id*. at 1-2.) Plaintiff asks the Court to "notify CDCR to give" him his legal property "ASAP" and to have "CDCR and GTL unsuspend" his messages on his tablet. (*Id*. at 2.) He states his daughter is acting "like [his] paralegal" and that he needs a Court order "for this and to use law library." Plaintiff asserts prison officials "are saying [he does not] have open case" and he cannot get the information he needs to finish his oppositions to the pending motions. (*Id*.)

**Appointment of Counsel**

Plaintiffs do not have a constitutional right to appointed counsel in § 1983 actions. *Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir. 1997), *rev'd in part on other grounds*, 154 F.3d 952, 954 n.1 (9th Cir. 1998). Nor can the Court require an attorney to represent a party under 28 U.S.C. § 1915(e)(1). *See Mallard v. U.S. Dist. Court*, 490 U.S. 296, 304-05 (1989). However, in "exceptional circumstances," the Court may request the voluntary assistance of counsel pursuant to section 1915(e)(1). *Rand*, 113 F.3d at 1525.

Given that the Court has no reasonable method of securing and compensating counsel, the Court will seek volunteer counsel only in extraordinary cases. In determining whether "exceptional circumstances exist, a district court must evaluate both the likelihood of success on the merits [and] the ability of the [plaintiff] to articulate his claims pro se in light of the complexity of the legal issues involved." *Rand*, 113 F.3d at 1525 (internal quotation marks & citations omitted).

The Court must evaluate the likelihood of Plaintiff's success on the merits of his claims. *Rand*, 113 F.3d at 1525. While Plaintiff's second amended complaint was screened as required by 28 U.S.C. § 1915A(a) (*see* Doc. 21[1]), Defendants have filed a motions to dismiss the second amended complaint (*see* Docs. 31 & 32) and briefing is ongoing. Therefore, it is premature to determine that there is a likelihood of success on the merits. *See, e.g.*, *Brookins v. Hernandez,* No. 1:17-cv-01675-AWI-SAB, 2020 WL 8613838, at *1 (E.D. Cal. June 11, 2020) (premature to determine likelihood of success on the merits where defendants have filed a motion for summary judgment); *Garcia v. Smith*, No. 10CV1187 AJB RBB, 2012 WL 2499003, at *3 (S.D. Cal. June 27, 2012) (denying appointment of counsel where prisoner's complaint survived defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), but it was "too early to determine" whether his adequately pleaded claims were likely to succeed on the merits, or even survive summary judgment). A likelihood of success on the merits determination is not the same as that required at screening; at screening, the Court is tasked with determining whether a plaintiff has sufficiently and plausibly alleged a cause of action or claim entitling the plaintiff to relief. The merits of the allegations are not tested, for the Court is to consider factual allegations to be true for purposes of screening.

The Court must also evaluate Plaintiff's ability to articulate his claims *pro se* in light of the complexity of the legal issues involved. *Rand*, 113 F.3d at 1525. Here, while the Court previously appointed counsel for the limited purpose of filing an amended complaint (*see* Doc. 14), the Court finds Plaintiff able to articulate his claims in light of Plaintiff's response to the

---

[1] Plaintiff's second amended complaint asserts a Fourteenth Amendment due process violation and violations of the Americans with Disability Act (ADA) and the Rehabilitation Act (RA).

3

OSC and the motions and requests made herein.

As for Plaintiff's lack of education and legal expertise, those circumstances do not qualify as exceptional circumstances. *See Callender v. Ramm*, No. 2:16-cv-0694 JAM AC P, 2018 WL 6448536, at *3 (E.D. Cal. Dec. 10, 2018) ("The law is clear: neither plaintiff's indigence, nor his lack of education, nor his lack of legal expertise warrant the appointment of counsel"). Further, limited law library access is a circumstance common to most prisoners and is not an exceptional circumstance. *Escamilla v. Oboyle*, No. 2:22-cv-2038 KJM AC P, 2023 WL 2918028, at *1 (E.D. Cal. Apr. 12, 2023) ("Circumstances common to most prisoners, such as a lack of legal education and limited law library access, do not establish exceptional circumstances that would warrant a request for voluntary assistance of counsel"); *Vasquez v. Moghaddam*, No. 2:19-cv-01283 AC P, 2022 WL 2133925, at *1 (E.D. Cal. June 14, 2022) ("despite his currently reduced access to the prison law library, the instant motion demonstrates plaintiff's ability to locate and cite to statutes, medical manuals and case law"). Notably too, there is no freestanding constitutional right to law library access for prisoners; law library access serves as one means of ensuring the constitutional right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 350-51 (1996). "[T]he Constitution does not guarantee a prisoner unlimited access to a law library. Prison officials of necessity must regulate the time, manner, and place in which library facilities are used." *Linquist v. Idaho State Bd. of Corrections*, 776 F.2d 851, 858 (9th Cir. 1985).

Next, Plaintiff asserts he does not have access to his legal documents at present. The Court presumes there are dozens of prisoners litigating their cases despite being housed in administrative segregation; it is not an exceptional circumstance. *Daniels v. Fox*, No. 2:15-cv-1264 GEB AC P, 2016 WL 6993565, at *2 (E.D. Cal. Nov. 29, 2016) ("A prisoner's confinement in administrative segregation does not present an exceptional circumstance"). And while Plaintiff asserts a complete inability to access his legal materials or documents at present, Plaintiff also indicates he had begun work on his opposition to the pending motions to dismiss. It also seems likely his legal materials will be returned at some point. In any event, a temporary inability to access legal materials can be addressed by an extension of time. Thus, the Court does not find Plaintiff's circumstance to be exceptional. *See, e.g.*, *Houston v. NGAI*, No. 2:20-cv-1051 KJM

DB P, 2022 WL 753905, at *1-2 (E.D. Cal. Feb. 7, 2022) (plaintiff sought appointment of counsel due in part to an inability to access his legal materials due to COVID-19 restrictions; his "lack of access to the law library and legal materials is nothing more than circumstances common to most inmates"); *Gonzalez v. Brown*, No. 2:17-cv-0176-WBS-CMK-P, 2017 WL 4340008, at *1 (E.D. Cal. Sept. 29, 2017) ("Plaintiff's claims of limited access to legal materials is not an exceptional circumstance, but one all prisoners face").

While the Court recognizes that Plaintiff is at a disadvantage due to his *pro se* status and his incarceration, the test is not whether Plaintiff would benefit from the appointment of counsel. *See Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986). The test is whether exceptional circumstances exist; here, they do not. There is little doubt most *pro se* litigants "find it difficult to articulate [their] claims," and would be better served with the assistance of counsel. *Id*. For this reason, in the absence of counsel, federal courts employ procedures which are highly protective of a *pro se* litigant's rights. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding *pro se* complaint to less stringent standard) (per curiam). In fact, where a plaintiff appears *pro se* in a civil rights case, the court must construe the pleadings liberally and afford the plaintiff any benefit of the doubt. *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). The rule of liberal construction is "particularly important in civil rights cases." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992). Thus, where a *pro se* litigant can "articulate his claims" in light of the relative complexity of the matter, the "exceptional circumstances" which might require the appointment of counsel do not exist. *Wilborn*, 789 F.2d at 1331; accord *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009).

In sum, the Court finds no exceptional circumstances warranting the appointment of counsel. *Rand*, 113 F.3d at 1525.

**Extension of Time**

Plaintiff's filing does not specify a length concerning any extension of time. (Doc. 38.) Plaintiff indicates he will be in administrative segregation for 90 days pending an investigation but does not indicate when the 90 days commenced. (*Id*.)

Because Plaintiff does not have access to his legal materials at present, the Court will

5

grant Plaintiff an extension of 90 days within which to file his oppositions to the pending motions to dismiss. Such an extension should allow for the conclusion of the 90-day investigation presently being conducted while Plaintiff is housed in administrative segregation.

To the extent Plaintiff complains Lancaster State Prison officials have indicated Plaintiff does not have an "open case," Plaintiff is advised a copy of this Order may be provided to prison officials to demonstrate Plaintiff is presently proceeding *pro se* in this open civil rights action. Additionally, California Code of Regulations, Title 15, Section 3123(b) addresses law library access for inmates with Preferred Legal User ("PLU") status and inmates with General Legal User ("GLU") status:

> (b) All inmates, regardless of their classification or housing status, shall be entitled to physical law library access that is sufficient to provide meaningful access to the courts. Inmates on PLU status may receive a minimum of 4 hours per calendar week of requested physical law library access, as resources are available, and shall be given higher priority to the law library resources. Inmates on GLU status may receive a minimum of 2 hours per calendar week of requested physical law library access, as resources are available.

California Code of Regulations title 15, § 3122(b) provides that inmates who have established court deadlines may apply for PLU status. An inmate may receive PLU status within 30 calendar days of his or her established court deadline unless the inmate can demonstrate need for a longer period of PLU based on extraordinary circumstances beyond the inmate's control. *Id.*, § 3122(b)(6). Hence, given the deadline associated with the extension of time Plaintiff will be granted, Plaintiff is advised a copy of this Order *may* be useful in gaining (PLU) status in the law library.

**Request for Orders**

As noted above, Plaintiff seeks an order from this Court directing prison officials to provide him with his legal materials, as well as an order directing "CDCR and GTL" to "unsuspend" his messages. Plaintiff is essentially seeking injunctive relief. Therefore, these requests will be considered separately, and the undersigned will issue findings and recommendations in due course.

### III. CONCLUSION AND ORDER

Accordingly, and for the reasons given above, **IT IS HEREBY ORDERED** that:

1. Plaintiff's motion for the appointment of counsel be **DENIED**;
2. Plaintiff's request for an extension of time is **GRANTED**. Plaintiff **SHALL** file his oppositions to Defendants' motions to dismiss **within 90 days** of the date of service of this order;
3. Plaintiff's requests for court orders will be addressed separately; and
4. The OSC issued June 27, 2023 is **DISCHARGED**.

IT IS SO ORDERED.

Dated: **July 13, 2023**

UNITED STATES MAGISTRATE JUDGE