1

2

3

4

5

6

7

8                         UNITED STATES DISTRICT COURT

9                         EASTERN DISTRICT OF CALIFORNIA

10

11   SHAUN MICHAEL BARRETT,                    Case No. 1:20-cv-01313-NODJ-CDB (PC)

12                     Plaintiff,              **FINDINGS AND RECOMMENDATIONS
                                               TO GRANT DEFENDANTS' MOTIONS
13          v.                                 TO DISMISS PLAINTIFF'S SECOND
                                               AMENDED COMPLAINT**
14   M. MESSER, et al.,
                                               (Docs. 31 & 32)
15                     Defendants.

16

17          Plaintiff Shaun Michael Barrett is appearing pro se and *in forma pauperis* in this civil

18   rights action pursuant to 42 U.S.C. § 1983.

19          **I.     RELEVANT BACKGROUND**

20          Plaintiff initiated this action with the filing of his original complaint on September 14,

21   2020. (Doc. 1.)

22          Following initial screening, the Court appointed counsel for Plaintiff for the limited

23   purpose of preparation and filing of a second amended complaint. (Doc. 14.)

24          The second amended complaint was filed on March 7, 2022. (Doc. 18.)

25          In its Second Screening Order issued February 10, 2023, the Court found Plaintiff's

26   second amended complaint stated the following cognizable claims: (1) due process violations

27   against Defendants Liang, Ramirez and Does 1 through 20; (2) Americans with Disabilities Act

28   ("ADA") violations against Defendants Messer, Bugarin, Silva, Mecum and Does 21 through 40

1   in their individual capacities, and against Defendants Clark and Allison[1] in their official

2   capacities; and (3) Rehabilitation Act of 1973 ("RA") violations against Defendants Messer,

3   Bugarin, Silva, Mecum and Does 21 through 40 in their individual capacities, and against

4   Defendants Clark and Allison in their official capacities. (Doc. 21.) Service of process followed,

5   and all Defendants agreed to waive service of a summons. (*See* Doc. 30.)

6          On May 22, 2023, Defendants Bugarin, Clark, Liang, Mecum, Messer, Ramirez and Silva

7   filed a motion to dismiss Plaintiff's second amended complaint. (Doc. 31.) That same date,

8   Defendant Allison filed a motion to dismiss Plaintiff's second amended complaint. (Doc. 32.)[2] On

9   September 18, 2023, Plaintiff filed his opposition (Doc. 43) and all Defendants replied on

10  October 2, 2023 (Doc. 44).

11         **II.     APPLICABLE LEGAL STANDARDS**

12         Defendants move to dismiss Plaintiff's second amended complaint for a lack of subject

13  matter jurisdiction and for failure to state a claim upon which relief can be granted. Fed. R. Civ.

14  P. 12(b)(1) & (6).

15         **A.  Motions to Dismiss**

16              ***Rule 12(b)(1)***

17         Federal Rule of Civil Procedure 12(b)(1) allows a defendant to raise the defense, by

18  motion, that the court lacks jurisdiction over the subject matter of an entire action or of specific

19  claims alleged in the action. When a party brings a facial attack to subject matter jurisdiction, that

20  party contends that the allegations of jurisdiction contained in the complaint are insufficient on

21  their face to demonstrate the existence of jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d

22  1035, 1039 (9th Cir. 2004). In a Rule 12(b)(1) motion of this type, the factual allegations of the

23  complaint are presumed to be true, and the motion is granted only if the plaintiff fails to allege an

24  element necessary for subject matter jurisdiction. S*avage v. Glendale Union High Sch. Dist. No.*

25  [1] Kathleen Allison was erroneously sued as Kathleen Sullivan. (*See* Doc. 32 at 1, n.1.)

26  [2] The docket for this action reflects two separate filings or entries on this date, the latter on behalf of
27  Defendant Allison and the former on behalf of the remaining Defendants. (*See* docket entries for Docs. 31
    [submitted at 3:16 p.m.] & 32 [submitted at 4:01 p.m.].) Nevertheless, a side-by-side comparison of the
28  documents reveals the motions are duplicative. Thus, subsequent citations to the motions to dismiss will
    reference only the earlier filing.

1   *205*, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003); *Miranda v. Reno*, 238 F.3d 1156, 1157 n.1 (9th Cir.

2   2001).

3        When a Rule 12(b)(1) motion factually attacks the existence of subject matter jurisdiction

4   by disputing the truth of the allegations that otherwise would invoke federal jurisdiction, no

5   presumption of truthfulness attaches to the plaintiff's allegations. *Thornhill Publ'g Co. v. Gen.*

6   *Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). For this type of motion, "the district court

7   is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and

8   testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v.*

9   *United States*, 850 F.2d 558, 560 (9th Cir. 1988). When a Rule 12(b)(1) motion attacks the

10   existence of subject matter jurisdiction in fact, plaintiff has the burden of establishing that such

11   jurisdiction does in fact exist. *Thornhill Publ'g Co.*, 594 F.2d at 733.

12                      ***Rule 12(b)(6)***

13        A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro*

14   *v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In resolving a 12(b)(6) motion, the Court's review is

15   generally limited to the "allegations contained in the pleadings, exhibits attached to the complaint,

16   and matters properly subject to judicial notice." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519

17   F.3d 1025, 1030-31 (9th Cir. 2008) (internal quotation marks & citations omitted). Dismissal is

18   proper if there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged

19   under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

20   1988) (citation omitted).

21        "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

22   accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

23   U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court

24   "accept[s] as true all well-pleaded allegations of material fact, and construe[s] them in the light

25   most favorable to the non-moving party." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998

26   (9th Cir. 2010) (citation omitted). In addition, the Court construes pleadings of pro se prisoners

27   liberally and affords them the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir.

28   2010) (citation omitted). However, "the liberal pleading standard … applies only to a plaintiff's

1    factual allegations," not his legal theories. *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). A

2    court's liberal interpretation of a pro se complaint, however, may not supply essential elements of

3    the claim that were not pled. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir.

4    1982); *see also Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992).

5                                **B.  Fourteenth Amendment Due Process**

6          The Due Process Clause protects prisoners from being deprived of property without due

7    process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Prisoners have a protected interest

8    in their personal property. *Hansen v. May*, 502 F.2d 728, 730 (9th Cir. 1974). An authorized,

9    intentional deprivation of property is actionable under the Due Process Clause. *See Hudson v.

10   Palmer*, 468 U.S. 517, 532, n.13 (1984) (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422

11   (1982)).  However, neither negligent nor unauthorized intentional deprivations of property by a

12   state employee "constitute a violation of the procedural requirements of the Due Process Clause

13   of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available."

14   *Id.* at 533. *See Quick v. Jones*, 754 F.2d 1521, 1524 (9th Cir. 1985) (distinguishing constitutional

15   claim based on prison officials' pursuit of an administrative process from claim based on prison

16   official undertaking "random and unauthorized conduct"). The Due Process Clause is violated

17   only when the agency "prescribes and enforces forfeitures of property without underlying

18   statutory authority and competent procedural protections." *Nevada Dept. of Corrections v.

19   Greene*, 648 F.3d 1014, 1019 (9th Cir. 2011) (citing *Vance v. Barrett*, 345 F.3d 1083, 1090 (9th

20   Cir. 2003)) (internal quotations omitted).

21         An authorized, intentional deprivation of property is carried out pursuant to established

22   state procedures, regulations, or statutes. *Logan*, 455 U.S. at 436; *Piatt v. McDougall*, 773 F.2d

23   1032, 1036 (9th Cir. 1985). An authorized, intentional deprivation of property is permissible if

24   carried out pursuant to a regulation that is reasonably related to a legitimate penological interest.

25   *See Turner v. Safley*, 482 U.S. 78, 89 (1987).

26         California law provides an adequate post-deprivation remedy for negligent or intentional,

27   but unauthorized, deprivations of property. *Barnett v. Centoni*, 31 F.3d 813, 816–17 (9th Cir.

28   1994) (citing Cal. Gov't Code §§ 810–895).

### C.  ADA & RA Violations

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. This prohibition extends to inmates in state prisons. *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 213 (1998). To state a claim under Title II, the plaintiff must allege four elements: (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits by the public entity; and (4) such exclusion, denial of benefits or discrimination was by reason of the plaintiff's disability. *Simmons v. Navajo County, Ariz*, 609 F.3d 1011, 1021 (9th Cir. 2010), overruled in part on other grounds by *Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016).

Courts must construe the language of the ADA broadly in order to give effect to the ADA's remedial goals. *Fortyune v. City of Lomita*, 766 F.3d 1098, 1101 (9th Cir. 2014). In general, a complaint that properly states a claim under Title II of the ADA also states a claim under Section 504 of the Rehabilitation Act. *See Zukle v. Regents of Univ. of Cal*., 166 F.3d 1041, 1045 n. 11 (9th Cir. 1999) ("[C]ourts have applied the same analysis to claims brought under both statutes"); *Armstrong v. Wilson*, 124 F.3d 1019, 1023 (9th Cir. 1997) ("Congress has directed that the ADA and [Rehabilitation Act] be construed consistently").

"To recover monetary damages under Title II of the ADA or the Rehabilitation Act, a plaintiff must prove intentional discrimination on the part of the defendant." *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001). The standard for intentional discrimination is deliberate indifference, which "requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." *Id*. at 1139. For a claim under the ADA to be successful, the plaintiff must both "identify 'specific reasonable' and 'necessary' accommodations that the defendant failed to provide" and show that the defendant's failure to act was "a result of conduct that is more than negligent, and involves an element of deliberateness." *Id*. Punitive damages are not available on claims under either the ADA or the RA. *Barnes v.*

1   *Gorman*, 536 U.S. 181, 189-90 (2002).

2       Title II of the ADA and Section 504 of the RA both prohibit discrimination on the basis of

3   disability. *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002). The ADA applies only to

4   public entities, whereas the RA proscribes discrimination in all federally funded programs. *Id*.

5   Specifically, the RA provides: "No otherwise qualified individual with a disability in the United

6   States ... shall, solely by reason of her or his disability, be excluded from the participation in, be

7   denied the benefits of, or be subjected to discrimination under any program or activity receiving

8   Federal financial assistance ...." 29 U.S.C. § 794(a).

9       **III.    PLAINTIFF'S SECOND AMENDED COMPLAINT**

10      In the second amended complaint, Plaintiff contends he has a hearing disability. He was

11  approved for use of a telecommunication device for the deaf while incarcerated at High Desert

12  State Prison. Plaintiff was hearing tested while housed at North Kern State Prison in April 2017.

13      Plaintiff asserts a CDCR 7536 DME Supply Receipt dated April 12, 2017 documents the

14  approval of his request to order two Oticon miniRITE hearing aids. Three withdrawals totaling

15  $990.93 from Plaintiff's inmate trust account between April 24, 2017 and May 9, 2017 were for

16  the purchase of hearing aids. Plaintiff was then transferred to Centinela State Prison in June 2017.

17      Plaintiff contends that while confined at North Kern and Centinela state prisons he was

18  approved for and used his Oticon hearing aids and the telecommunications devices for the deaf

19  (TDD).

20      In December 2018, Plaintiff was transferred to Corcoran State Prison (CSP) and was

21  permitted to use his Oticon hearing aids until October 22, 2019. He contends he was permitted

22  occasional access to the TDD equipment at CSP from December 2018 through November 2019.

23  Plaintiff asserts prison services, programs, and activities generally available at North Kern,

24  Centinela and CSP include phone contact with family members, educational opportunities,

25  employment, transitional programs, and substance abuse programs. The Oticon hearing aids

26  allowed Plaintiff to hear with sufficient clarity enabling him to participate in the activities,

27  programs and services offered.

28      Plaintiff contends that on October 22, 2019, Defendants Liang, Ramirez and Does 1

through 10 custody officers conducted a search of the prison. During the search, the officers entered Plaintiff's cell and confiscated his Oticon hearing aids. Plaintiff asserts he inquired about the missing hearing aids upon returning to his cell but was never provided documentation of their confiscation. Plaintiff alleges CDCR Form 1824, Log No. 19-6764 contains Plaintiff's report that custody staff searched his cell on October 22, 2019 and did not provide him a cell search receipt to document the confiscation, but that Plaintiff was advised that medical staff would give him new and better hearing aids for free.

Plaintiff alleges he was referred for an audiology appointment on October 28, 2019.

On October 29, 2019, Plaintiff submitted CDCR Form 1824 and Form 602 to request return of or reimbursement for the Oticon hearing aids confiscated on October 22. In November 2019, Plaintiff contends CSP staff no longer permitted him to use the TDD equipment.

On November 12, 2019, Plaintiff asserts the Reasonable Accommodation Panel ("RAP") issued its response to his Form 1824, advising that his reimbursement concerns would be best addressed through the inmate appeals process. Plaintiff contends he never received a reply to his Form 602 (grievance/appeal) filed on October 29, 2019.

Plaintiff believes a CDCR 7536 DME Supply Receipt dated November 21, 2019 documents his receipt of state-issued hearing aids on that date. Plaintiff contends these replacement hearing aids do not fit his ears properly, causing the hearing aids to fall out frequently. Further, the replacement hearing aids do not filter out or diminish background noise, making it difficult for him to communicate because Plaintiff cannot hear what people are saying unless there are no other competing sounds.

Plaintiff further asserts he lost his job as a classroom aide after the Oticon hearing aids were confiscated because he could not hear sufficiently to assist the students or the instructor. Plaintiff sought but was unable to participate in substance abuse treatment, education, and transition programs after the Oticon hearing aids were confiscated because he could not hear properly.

Plaintiff contends that on February 1, 2020, the Prison Law Office wrote to the CDCR on his behalf, to assist Plaintiff in the return of or reimbursement for the confiscated hearing aids.

1   The correspondence advised CDCR that Plaintiff should have been allowed to keep his hearing

2   aids unless his primary care physician evaluated him and determined the hearing aids were no

3   longer appropriate, citing statutory authority. Further, the correspondence advised that the RAP's

4   reply to Plaintiff's Form 1824 failed to address Plaintiff's allegation that custody officers

5   inappropriately confiscated his hearing aids and did not place Plaintiff's allegations on the non-

6   compliance log, resulting in the RAP's failure to investigate and address Plaintiff's disability-

7   related issues. Plaintiff contends his Oticon hearing aids have never been returned to him, nor has

8   he been reimbursed for them.

9        On May 21, 2021, Plaintiff was transferred from CSP to California State Prison, Los

10   Angeles.

11        **IV.   DISCUSSION**

12        Rather than summarizing the parties' various positions on the issues addressed in the

13   pending motions to dismiss as a whole, the Court will address the parties' positions[3] on the issues

14   prior to addressing that particular issue.

15                              ***The ADA/RA Individual Capacity Claims***

16        Defendants argue the ADA/RA claims alleged against Defendants Bugarin, Mecum,

17   Messer and Silva must be dismissed because "individual state employees are not subject to suit

18   under the ADA or RA" and the only proper defendant for such a claim is the public entity

19   responsible for the alleged discrimination. (Doc. 31-1 at 10-11; *see also* Doc. 44 at 2-3.) Because

20   failure to name a public entity as a defendant under the ADA/RA "means Plaintiff's claims must

21   be dismissed for failure to state a claim upon which relief can be granted," Defendants contend

22   Bugarin, Mecum, Messer and Silva should be dismissed from the action. (*Id*. at 11.)

23        Plaintiff contends he can sue government actors in their individual or official capacities,

24   citing to *Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985). (Doc. 43 at 2.)

25        Here, Defendants are correct. The proper defendant in ADA actions is the public entity

26   responsible for the alleged discrimination. *See United States. v. Georgia*, 546 U.S. 151, 154

27

28   [3] Plaintiff's opposition is comprised of a ten-page narrative. (Doc. 43.) It does not follow Defendants' formatting or subheadings concerning the various issues. The Court has considered the entirety of Plaintiff's opposition, but citation references to his opposition may be equally non-specific.

1   (2006); *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) ("plaintiff cannot bring an action

2   under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights

3   created by Title II of the ADA or section 504 of the Rehabilitation Act."). Rather, "the proper

4   defendant for a claim under Title II of the ADA is the public entity responsible for the alleged

5   discrimination." State correctional facilities are "public entities" within the meaning of the ADA.

6   *See* 42 U.S.C. § 12131(1)(A) & (B); *Pennsylvania Dep't. of Corr. v. Yeskey*, 524 U.S. 206, 210

7   (1998); *Armstrong v. Wilson*, 124 F.3d 1019, 1025 (9th Cir. 1997). And a state official sued in her

8   official capacity is, in effect, a suit against the government entity and is an appropriate defendant

9   in an ADA action. *See, e.g*., *Rilurcasa v. California*, No. 1:20-cv-01568-JLT-SAB (PC), 2023

10  WL 3200270, at *4 (E.D. Cal. May 2, 2023), findings and recommendations adopted, 2023 WL

11  4088106 (E.D. Cal. June 20, 2023).

12          Here, Plaintiff's ADA/RA claims against Defendants Bugarin, Mecum, Messer and Silva

13  should be dismissed because these individuals are state officials sued in their individual

14  capacities. *Vinson*, 288 F.3d at 1156.

15                          ***The ADA/RA Monetary Damages***

16          Defendants contend Plaintiff's claims for money damages on his ADA/RA claims are

17  insufficient as a matter of law. (Doc. 31-1 at 12-14.) More specifically, Defendants assert

18  Plaintiff's allegations concerning exclusion or discrimination are conclusory and generalized,

19  amounting to formulaic recitations of elements of ADA/RA claims, and as such, are insufficient

20  to state a claim. (*Id*. at 12-13.) Defendants argue Plaintiff admits his hearing aids were mistakenly

21  confiscated as wireless communication devices "and not 'because of' his disability." (*Id*. at 13.)

22  Further, Defendants contend "there are no facts plead to support the element of intentional

23  discrimination" and that Plaintiff's allegations suggest "the opposite was true—Corcoran staff

24  attempted to accommodate his hearing disability by providing replacement hearing aids, albeit

25  ones that Plaintiff claims did not work." (*Id*.) Arguing that "inadequate treatment for a disability

26  does not violate the ADA or the RA," Defendants contend "there are insufficient facts plead that

27  officials at Corcoran were intentionally ignoring or disregarding Plaintiff's hearing disability

28  knowing it would violate his rights." (*Id*. at 14.)

1

2          Plaintiff asserts he was "discriminated against due to [his] not getting the programs &

3   services & activities and not one staff member has [tried] to resolve there matters responsible &

4   or unreasonable accommodation by all involved staff." (Doc. 43 at 5.) He asserts he has "been

5   discriminated against due to [being an] inmate and staff fails to resolve any matter or just simpal

6   mistake was made on staffs part and that they are to prideful to fix any of the matters." (*Id.* at 6.)

7   Plaintiff states "the defendants are asking for dismisal due to the discrimination was not

8   intentional if the discrimination was not intention why did the discrimination last the whole time

9   [he] was at Corcoran State Prison and never given back my Oticon hearing aids and or the money

10  that [he paid] for those hearing aids or even the option to [purchase] a new pair of Oticon hearing

11  aids and was not allowed to use TTY & or TDD equipment on 3-B Facility." (*Id.* at 6-7.) Plaintiff

12  argues even if the refusal to allow Plaintiff to use the TTY/TTD equipment was "not intentional it

13  still happen and has not been fixed." (*Id.* at 7.)

14         Title II of the ADA provides that "no qualified individual with a disability shall, by reason

15  of such disability, be excluded from participation in or be denied the benefits of the services,

16  programs, or activities of a public entity, or be subjected to discrimination by any such entity."

17  *McGary v. City of Portland*, 386 F.3d 1259, 1264-65 (9th Cir. 2004) (quoting 42 U.S.C. §

18  12132). In order to state a claim of disability discrimination under Title II of the ADA, a plaintiff

19  must allege four elements: (1) he is an individual with a disability; (2) he is otherwise qualified to

20  participate in or receive the benefit of some public entity's services, programs, or activities; (3) he

21  was excluded from participation, denied the benefits of the public entity's services, programs, or

22  activities, or was otherwise discriminated against by the public entity; and (4) such exclusion,

23  denial of benefits, or discrimination was by reason of his disability. *Id.* at 1265.

24         "Title II of the ADA was expressly modeled after Section 504 of the Rehabilitation Act."

25  *Id.* at 1135. A plaintiff who brings suit under Section 504 must show (1) he is an individual with a

26  disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefits of the

27  program solely by reason of his disability; and (4) the program receives federal financial

28  assistance. *Id.*

1    Proof of intentional discrimination is not required to state a violation of the ADA. *Lentini*

2    *v. California Ctr. for the Arts, Escondido*, 370 F.3d 837, 846 (9th Cir. 2004). But to recover

3    damages under Title II of the ADA or the RA, a plaintiff must prove intentional discrimination on

4    the part of the defendant. *Duvall*, 260 F.3d at 1138; *see Lovell v. Chandler*, 303 F.3d 1039, 1056

5    (9th Cir. 2002) ("'[C]ompensatory damages are not available under Title II [of the ADA] or § 504

6    [of the RA] absent a showing of discriminatory intent'") (citation omitted). The Ninth Circuit has

7    adopted the deliberate indifference standard in proving intentional discrimination under the ADA

8    and the RA. *Duvall*, 260 F.3d at 1138. Accord *Mark H. v. Lemahieu*, 513 F.3d 922, 938 (9th Cir.

9    2008) ("a public entity can be liable for damages under § 504 if it intentionally or with deliberate

10   indifference fails to provide meaningful access or reasonable accommodation to disabled

11   persons."). That is, the plaintiff must prove "both knowledge that harm to a federally protected

12   right was substantially likely, and a failure to act upon that likelihood." *Duvall*, 260 F.3d at 1139

13   (citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1988)).

14   <u>The Hearing Aids</u>

15   The second amended complaint fails to adequately allege intentional discrimination

16   regarding the confiscation of his Oticon hearing aids. There are no facts indicating any Defendant

17   was deliberately indifferent. As stated elsewhere in these findings, Plaintiff acknowledges in his

18   second amended complaint (Doc. 18 at 7) that the confiscation of his Oticon hearing aids was the

19   result of Defendants Liang and Ramirez's mistaken belief that the hearing aids were prohibited

20   wireless communication devices. Such a mistaken belief is the antithesis of intentional

21   discrimination and is more akin to "mere negligence," which is insufficient to establish deliberate

22   indifference. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (holding that "deliberate

23   indifference entails something more than mere negligence"). The confiscation simply does not

24   relate to a denial of any right based upon Plaintiff's hearing disability.

25   <u>TDD/TTY[4] Access</u>

26   Plaintiff's second amended complaint alleges he had been approved to use TDD while

27

28   ─────────────────────
     [4] The second amended complaint references "TDD/TYY equipment" (*see* Doc. 18 at 2); nevertheless, it
     appears "TTY" is the correct acronym, referring to a teletypewriter.

Case 1:20-cv-01313-NODJ-CDB   Document 47   Filed 12/29/23   Page 12 of 20

confined at North Kern State Prison and Centinela State Prison from April 2017 through December 2018, and that after his transfer to Corcoran, he was "occasionally allowed access to the TDD equipment at Corcoran from December 2018 until November 2019." (Doc. 18 at 4.) Further, Plaintiff alleges that "[s]tarting in November 2019," he was not permitted "by staff at Corcoran to use the TDD equipment." (*Id.* at 5; *see also id.* at 8.) Plaintiff asserts his inability to use the equipment meant he was unable to communicate with family. (*Id.* at 9.) Plaintiff also alleges that Defendants Bugarin, Mecum, Messer, Silva and Doe Defendants 21 through 40 denied Plaintiff access to TDD/TTY equipment and failed to provide reasonable accommodation "that would have allowed him to participate in programs, services, or activities at Corcoran including but not limited to education, substance abuse, transitional programs, and employment." (*Id.* at 2.)

"A public entity may be liable for damages under Title II of the ADA or § 504 of the Rehabilitation Act 'if it intentionally or with deliberate indifference fails to provide meaningful access or reasonable accommodation to disabled persons.'" *Updike v. Multnomah County*, 870 F.3d 939, 951 (9th Cir. 2017) (internal citations omitted).

There are no facts alleged in the second amended complaint demonstrating or even suggesting Defendants acted with knowledge that harm to Plaintiff's federally protected right was substantially likely and failed to act upon that likelihood. *Duvall*, 260 F.3d at 1139. Thus, similar to his pleadings with respect to hearing aids, Defendants' conduct with respect to Plaintiffs' access to TDD/TTY equipment fails to meet the deliberate indifference standard.

<u>Job Loss</u>

The second amended complaint alleges Plaintiff lost his job as a classroom aide because "he could not hear with sufficient clarity to assist the students or teacher" following the confiscation of his Oticon hearing aids. (Doc. 18 at 5, 8.) The Court finds the allegations concerning Plaintiff's job loss to be conclusory. There are no facts indicating Defendants acted with knowledge that harm to Plaintiff's federally protected right was substantially likely and no facts to indicate they failed to act upon that likelihood. *Duvall*, 260 F.3d at 1139. Thus, any conduct by Defendants relevant to Plaintiffs' alleged job loss falls short of deliberate indifference.

12

1                         <u>Program Participation</u>

2        The second amended complaint alleges Plaintiff "sought to but was unable to participate

3 in substance abuse treatment, education, and transition programs after the Oticon hearing aids

4 were taken because he could not hear with sufficient clarity." (Doc. 18 at 5.) The Court finds the

5 allegations concerning Plaintiff's inability to participate in various programs to be conclusory.

6 There are no facts indicating Defendants acted with knowledge that harm to Plaintiff's federally

7 protected right was substantially likely and no facts to indicate they failed to act upon that

8 likelihood. *Duvall*, 260 F.3d at 1139.

9        The Court notes Plaintiff's filing in opposition to Defendants' motions to dismiss states he

10 was discriminated against for being an inmate and makes no reference to discrimination by reason

11 of his hearing disability. In sum, Plaintiff's ADA/RA claims seeking money damages should be

12 dismissed.

13                  ***The Injunctive Relief Claims and Mootness***

14        Noting Plaintiff sued Defendants Allison and Clark in their official capacities under the

15 ADA/RA for injunctive relief only, Defendants contend the claims must be dismissed as moot

16 because Plaintiff is no longer housed at CSP where the discrimination alleged occurred. (Doc. 31-

17 1 at 16-17; *see also* Doc. 44 at 3.) Hence, when Plaintiff was transferred from CSP to the state

18 prison in Los Angeles, his claims became moot and must be dismissed. (*Id*.)

19        Plaintiff asserts the fact he is no longer CSP "does not make any claims moot," essentially

20 contending the parties "are all responsible and played a part in this matter," never attempted a

21 resolution, and denied him programs and services "due to all staff dehumanized all inmates

22 instead of going by law and policy." (Doc. 43 at 3.) Plaintiff states the fact he is no longer housed

23 at CSP is irrelevant because he was housed there when the events giving rise to his claims

24 occurred. (*Id*. at 7-8.) Plaintiff contends he has no control over his housing and alleges the

25 transfer "shows that they had [him] transfer for their reason." (*Id*. at 8.)

26        If an inmate is seeking injunctive relief with respect to his conditions of confinement at a

27 particular facility, the prisoner's transfer to another prison renders moot the request for injunctive

28 relief unless there is some evidence of an expectation of being transferred back. *See Nelson v.*

1   *Heiss*, 271 F.3d 891, 897 (9th Cir. 2001) (explaining that "when a prisoner is moved from a

2   prison, his action will usually become moot as to conditions at that particular facility") (citing

3   *Dilley v. Gunn*, 64 F.3d 1365, 1368-69 (9th Cir. 1995)); *Johnson v. Moore*, 948 F.3d 517, 519

4   (9th Cir. 1991) (per curiam) (finding that claims for injunctive relief "relating to [a prison's]

5   policies are moot" when the prisoner has been moved and "he has demonstrated no reasonable

6   expectation of returning to [the prison]").  *E.g., Weisner v. Hill*, No. 2:21-cv-02275-DAD-DMC

7   (PC), 2023 WL 5353629, at *1 (E.D. Cal. Aug. 21, 2023) ("Plaintiff's request for injunctive relief

8   is dismissed with prejudice as having been rendered moot by his subsequent transfer to a different

9   prison"); *Tunstall v. Bodenhamer*, No. 2:16-cv-2665 JAM DB P, 2017 WL 3601448, at *5 (E.D.

10  Cal. Aug. 18, 2017) ("because plaintiff is no longer incarcerated at CSP-Sac, his claims for

11  injunctive relief—orders requiring defendants to make cells ADA compliant and for a transfer to

12  CMF—are moot and will be dismissed").

13          Here, Plaintiff's ADA/RA claims against Defendants Allison and Clark should be

14  dismissed because the injunctive relief Plaintiff seeks is moot in light of his transfer out of CSP.[5]

15                  ***The Injunctive Relief Claims and the Armstrong Class Action***

16          Defendants contend Plaintiff's claims to injunctive relief are barred by the *Armstrong*

17  class action. (Doc. 31-1 at 15-16.) Specifically, because Plaintiff "seeks 'reasonable

18  accommodations based on his hearing disability to allow his participation in programs, services

19  and activities available to the non-hearing-impaired inmates at Corcoran and/or other CDCR

20  facilities,'" the requested relief is duplicative of the relief sought in *Armstrong* and Plaintiff's

21  claim "must be pursued in that action." (*Id*. at 15.) Further, because *Armstrong* "class counsel has

22  identified Plaintiff and the claims in this action," those claims are "subsumed within the

23  *Armstrong* class action" and must be dismissed. (*Id*. at 16.) And, because that is the only claim

24  against Defendants Allison and Clark, those Defendants must be dismissed from the action. (*Id*.)

25          Plaintiff asserts he is not basing his claims "under Armstrong class action" although "there

26  may be parts that are simelar and are same due only because [he is an] ADA inmate with hearing

27

28  _____
    [5] On October 20, 2023, Plaintiff filed a notice of change of address indicating he is presently housed at the
    Substance Abuse Treatment Facility (SATF). (Doc. 45.)  Although CSP and SATF both are located in
    Corcoran, CA, they are separate facilities with separate wardens.

                                        14

1   & mobilities issues." (Doc. 43 at 9.)

2           A district court may dismiss an individual suit for injunctive and equitable relief for an

3   alleged unconstitutional prison condition where there is a pending class action suit involving the

4   same subject matter. *See Crawford v. Bell*, 599 F.2d 890, 892–93 (9th Cir. 1979) ("A court may

5   choose not to exercise its jurisdiction when another court having jurisdiction over the same matter

6   has entertained it and can achieve the same result."); s*ee also Frost v. Symington*, 193 F.3d 348,

7   359 (9th Cir. 1999) ("To the extent that a class action involving the same issues raised by Frost is

8   currently pending in the District of Arizona, Frost may have to bring all of his related claims for

9   equitable relief … through [the class action]") (citing *Crawford*); *McNeil v. Guthrie*, 945 F.2d

10  1163, 1165 (10th Cir. 1991) ("Individual suits for injunctive and equitable relief from alleged

11  unconstitutional prison conditions cannot be brought when there is an existing class action. To

12  permit them would allow interference with the ongoing class action. Claims for equitable relief

13  must be made through the class representative until the class action is over or the consent decree

14  is modified").

15          The *Armstrong* class action was filed in 1994 by "[a] certified class of all present and

16  future California state prison inmates and parolees with disabilities [who] sued California state

17  officials in their official capacities, seeking injunctive relief for violations of the RA and the ADA

18  in state prisons." *See Armstrong v. Wilson*, 124 F.3d 1019, 1021 (9th Cir. 1997). In *Armstrong*,

19  the Northern District of California found that defendants had violated the ADA and RA and

20  entered a remedial order and injunction under which California Department of Corrections and

21  Rehabilitation ("CDCR," formerly the California Department of Corrections) must evaluate its

22  programs and develop remedial plans to remedy violations of the ADA and RA while plaintiffs

23  monitor defendants' compliance. *See Armstrong v. Davis*, 318 F.3d 965, 968 (9th Cir. 2003);

24  *Armstrong v. Wilson*, No. C-94-2307 CW (N.D. Cal. Sept. 20, 1996) (Doc. 159 at 1, "Remedial

25  Order," noting defendants had violated the ADA and RA).

26          Here, Plaintiff alleges he has a hearing disability[6] (Doc. 18 at 3) and that he "is a qualified

27

28  ────────────────

[6] In his opposition to the instant motions, Plaintiff also asserts he has mobility impairments (Doc. 43 at 9),
but any such mobility impairments are not the subject of Plaintiff's claims in this action.

individual with a disability because he has a physical hearing impairment" (*id*. at 8). Based on these allegations, Plaintiff is a member of the *Armstrong* class. And Plaintiff "seeks to obtain a court order clarifying that Plaintiff is entitled to reasonable accommodations based on his hearing disability to allow his participation in the programs, services, and activities available to non-hearing-impaired inmates." (*Id*. at 8.) Hence, the relief Plaintiff seeks is covered by the *Armstrong* class action. Notably too, as Defendants point out, Prison Law Office correspondence dated February 21, 2020 directed to CDCR's Office of Legal Affairs identifies Plaintiff as an "*Armstrong* class member." (*See* Doc. 18 at 14 [Exhibit 2].)

In sum, Plaintiff's claims for declaratory and injunctive relief under the ADA/RA should be brought in the *Armstrong* class action, if at all, and should be dismissed from this action.

### The Fourteenth Amendment Due Process Claim

Defendants argue Plaintiff has pled negligent or unauthorized intentional deprivation of property for which a due process claim does not lie. (Doc. 31-1 at 16-18; *see also* Doc. 44 at 4.) Specifically, because Plaintiff has alleged Ramirez and Liang mistakenly believed Plaintiff's hearing aids were wireless communication devices, Defendants contend Plaintiff "is actually alleging an *unauthorized, intentional deprivation* because he claims the Oticon hearing aids were authorized property and were taken and then withheld from him in violation of health care policies." (*Id*. at 16-17, emphasis in original.) Hence, Defendants assert this claim should be dismissed without leave to amend. (*Id*. at 18.)

Plaintiff opposes, stating "all due process was violated." (Doc. 43 at 3.) He contends Defendants Liang and Ramirez were not properly trained regarding confiscation of "DME medical," resulting in a confiscation of his Oticon hearing aids in an improper manner because such a confiscation can only occur "through medical." (*Id*. at 5.)

Plaintiff's second amended complaint contends Defendants Liang and Ramirez and Does 1 through 10 were conducting a "search of the prison" on October 22, 2019. (Doc. 18 at 4.) Liang and Ramirez entered Plaintiff's cell and confiscated his Oticon hearing aids, mistakenly believing them to be wireless communication devices, or contraband, in violation of Title 15 of the California Code of Regulations section 3006(a). (*Id*. at 4, 7.) Liang and Ramirez also failed to

1    provide a receipt for the property taken following the search and Plaintiff submitted reasonable

2    accommodation requests and a grievance concerning the confiscation of his hearing aids. (*Id*. at

3    4-5.) Plaintiff was advised by the RAP that his concerns were best addressed in grievance, yet

4    Plaintiff never received a response to his grievance. (*Id*. at 5.) Plaintiff alleges his Oticon hearing

5    aids were confiscated "without the provision of due process." (*Id*. at 8.)

6          As noted, Plaintiff contends Liang and Ramirez mistakenly believed that his hearing aids

7    were wireless communication devices, and therefore, contraband. The Court finds Defendants

8    Liang and Ramirez's confiscation of Plaintiff's Oticon hearing aids on that basis was an

9    unauthorized deprivation of property.

10          An authorized deprivation is one carried out pursuant to established state procedures,

11    regulations, or statutes. *Piatt*, 773 F.2d at 1036. Here, the confiscation of Plaintiff's Oticon

12    hearing aids did not occur pursuant to established state procedures because the confiscation or

13    deprivation was done – according to Plaintiff's allegations – "mistakenly," *i.e.*, without an order

14    from a physician finding Plaintiff should no longer be permitted to possess or use such hearing

15    aids. Plaintiff acknowledges the lack of a physician's order in his opposition. In sum, the

16    confiscation of Plaintiff's Oticon hearing aids was unauthorized. *See Hudson*, 468 U.S. at 530-34.

17          And "an unauthorized intentional deprivation of property by a state employee does not

18    constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth

19    Amendment if a meaningful postdeprivation remedy for the loss is available." *Id.* at 533.

20    California's Government Claims Act provides inmates with an adequate post-deprivation remedy

21    for any property deprivations. *Barnett*, 31 F.3d at 816-17. Additionally, "the Due Process Clause

22    is [] not implicated by a negligent act of an official causing unintended loss of or injury to ...

23    property." *Daniels v. Williams*, 474 U.S. 327, 328 (1986). Thus, to the extent Liang and Ramirez

24    acted negligently by taking Plaintiff's allowable Oticon hearing aids during a search of Plaintiff's

25    cell, believing them to be a disallowed wireless communication devices, the Due Process Clause

26    is not implicated. *See, e.g.*, *Silvis v. County*, No. 5:23-cv-00670-JFW-AJR, 2023 WL 8153656, at

27    *6 (C.D. Cal. Oct. 23, 2023) (deprivation of eyeglasses, hearing aids, walker, and legal papers

28    during cell search is random and unauthorized taking of property; does not constitute denial of

1    constitutional due process if state law provides adequate post-deprivation remedy); *Bland v. Cox*,

2    No. 2:20-CV-0715-DMC-P, 2021 WL 3783909, at *5 (E.D. Cal. Aug. 26, 2021) (plaintiff cannot

3    state a cognizable due process claim for prison's taking of his property, including hearing aids,

4    because California provides adequate post-deprivation remedy for negligent deprivation of

5    property); *Miller v. Sanchez*, No. CV 20-06-GW (KK), 2020 WL 528010, at *11 (C.D. Cal. Feb.

6    3, 2020) (dismissing due process claim for deprivation of property, including hearing aids,

7    because California provides adequate post-deprivation remedy); *Colbert v. Martinez*, No. 1:07-

8    cv-01456-LJO-GSA PC, 2008 WL 2186312, at *1 (E.D. Cal. May 23, 2008) (finding plaintiff

9    cannot state Fourteenth Amendment claim for a correctional officer's confiscation of his hearing

10   aids as contraband because he has remedies available under state law), adopting report and

11   recommendation, 2008 WL 28752360 (E.D. Cal. July 23, 2008).

12          The Court will recommend Plaintiff's Fourteenth Amendment due process claim be

13   dismissed without leave to amend.

14                         ***Qualified Immunity***

15          Defendants Liang and Ramirez contend they are entitled to qualified immunity. (Doc. 31-

16   1 at 18-19; *see also* Doc. 44 at 4.) Specifically, Defendants assert in 2019 it was not clearly

17   established that confiscation of what prison officials mistakenly believed was contraband could

18   violate an inmate's due process rights because there is no clearly established right to retain

19   property that violates prison regulations. (*Id*. at 19.)

20          Plaintiff contends Defendants Liang and Ramirez are not entitled to qualified immunity

21   because "they took and [oath] and sign up to be [professionals] so they are not incompetent

22   otherwise they would not be working for CDCR and due to they worked for CDCR they have had

23   training on DME and if they have not had training they should not have touch [his] hearing aids

24   and got another officer that knew policy for DME hearing aids." (Doc. 43 at 9.) He contends

25   "they can't say they don't know the law." (*Id*. at 10.)

26          Because this Court will recommend the due process claims against Defendants Liang and

27   Ramirez should be dismissed as an unauthorized deprivation, the Court declines to address

28   Defendants' contention that Liang and Ramirez are entitled to qualified immunity.

## V.     LEAVE TO AMEND

Defendants contend Plaintiff should not be granted leave to amend, contending it is evident Plaintiff cannot amend his complaint to state a claim and that his second amended complaint was his third attempt at pleading ADA/RA and due process claims without success. (Doc. 31-1 at 19-20; Doc. 44 at 5.)

Plaintiff states he is "asking for my motion to amend and proceed shall move forward and request a settlement conference to come to resolve this matter." (Doc. 43 at 10.)

Considering the discussion above, the Court finds granting Plaintiff further leave to amend would be futile. *See Lopez v. Smith*, 203 F.3d 1122, 1126-30 (9th Cir. 2000). Specifically, no amended allegations could remedy the fact that the individual Defendants may not be sued in their individual capacities and that claims for injunctive must be brought in the *Armstrong* class action.  Likewise, in the face of Defendants' arguments that Plaintiff's other ADA claims for monetary relief fail without evidence of intentional discrimination or deliberate indifference, in his opposition brief, Plaintiff cites no such evidence that might be available to cure those claims. Finally, Plaintiff's due process claims cannot survive because he has adequate remedies under state law. Therefore, the undersigned will recommend granting further leave to amend be denied.

## VI.     CONCLUSION AND RECOMMENDATIONS

For the reasons stated above, **IT IS HEREBY RECOMMENDED** that Defendants' motions to dismiss (Docs. 31 & 32) be **GRANTED**. More specifically:

1. Plaintiff's ADA/RA individual capacity claims against Defendants Bugarin, Mecum, Messer and Silva be DISMISSED;

2. Plaintiff's ADA/RA claims seeking money damages be DISMISSED;

3. Plaintiff's ADA/RA claims seeking injunctive relief against Defendants Allison and Clark be DISMISSED;

4. Plaintiff's ADA/RA claims seeking declaratory and injunctive relief should be brought in the *Armstrong* class action and should be DISMISSED from this action;

5. Plaintiff's Fourteenth Amendment due process claims should be DISMISSED;

6. Plaintiff's second amended complaint should be DISMISSED without leave to amend;

1    and

2        7.   The Clerk of the Court should be directed to close this action.

3        These Findings and Recommendations will be submitted to the district judge assigned to

4    this case, pursuant to 28 U.S.C. § 636(b)(l). **Within 14 days** of the date of service of these

5    Findings and Recommendations, a party may file written objections with the Court. The

6    document should be captioned, "Objections to Magistrate Judge's Findings and

7    Recommendations." Failure to file objections within the specified time may result in waiver of

8    rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v.*

9    *Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

10   IT IS SO ORDERED.

11       Dated:   __December 28, 2023__                    _____

12                                                          UNITED STATES MAGISTRATE JUDGE